UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-mj-432 (JRT/JTH)

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  <br>   )  <br>   Plaintiff,   )  <br>   )  <br>v.   )  <br>   )  <br>ABDIAZIZ SHAFII FARAH,   )  <br>   )  <br>   Defendant.   )  | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE THE DETENTION ORDER** |

The United States of America, by and through its undersigned attorneys, respectfully submits the following response in opposition to Defendant Abdiaziz Shafii Farah's objections to, and motion to revoke, the Magistrate Judge's Pretrial Detention Order (Doc. No. 17). For the reasons set forth below, the motion should be denied without a hearing.

**FACTUAL BACKGROUND**

Farah is one of the targets of a federal investigation into a massive scheme to fraudulently obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds. (Doc. No. 2-1 ¶ 7; Doc. No. 15 at 7:15–25.) As part of the investigation, on January 20, 2022, Farah's residence and business were searched pursuant to federal search warrants. (Doc. No. 2-1 ¶ 84; Doc. No. 15 at 8:10–15.) During the search of Farah's residence, federal agents seized Farah's U.S. passport card and evidence of Farah's transfer of millions of dollars from companies involved in the scheme under investigation to various foreign entities. (Doc. No. 2-1 ¶ 96; Doc. No. 15 at 9:8–13:17.) Federal agents also seized Farah's U.S. passport book, along with

$60,000 in cash, while inventorying the contents of Farah's seized vehicle the same day. (Doc. No. 2-1 ¶ 97; Doc. No. 15 at 16:19–2, 20:6–13.) Farah was provided with inventory receipts identifying Farah's seized U.S. passport. (Doc. No. 2-1 ¶¶ 96–97; Doc. No. 15 at 17:2–6, 19:8–24.) In the wake of the search warrant executions, Farah's role in the scheme became public and he received considerable media attention. (Doc. No. 2-1 ¶ 98.)

On March 22, 2022, after his U.S. passport had been seized by federal agents and his role in the scheme became public, Farah applied for a new U.S. passport. (Doc. No. 2-1 ¶ 99; Doc. No. 15 at 16–17.) Farah applied for the passport with his co-conspirator, Mohamed Ismail, whose passport was also seized on January 20, 2022 as part of the same investigation. (Doc. No. 15 at 26:18–27:8.) Farah submitted his passport application with Ismail in person at the Minneapolis Passport Agency in downtown Minneapolis. (Doc. No. 2-1 ¶ 99; Doc. No. 15 at 26:10–15.) Farah repeatedly lied under penalty of perjury on his passport application. For example, Farah wrote on the application that his seized passport had been "lost." (Doc. No. 2-1 ¶ 100; Doc. No. 15 at 27:2–4.) Farah also claimed that he "could not find [the passport] anywhere." (Doc. No. 2-1 ¶¶ 101–02; Doc. No. 15 at 25:14–17.) Based on Farah's application containing false representations regarding his previously-issued passport, the U.S. Department of State issued Farah a new U.S. passport the same day he applied, March 22, 2022. (Doc. No. 2-1 ¶ 103.)

In March 2022, Farah booked flights departing from the Minneapolis-St. Paul International Airport with the ultimate destination of Nairobi, Kenya. (Doc. No. 2-1

2

¶ 104; Doc. No. 15 at 22:9–10; Doc. No. 14 at 3.) Farah did not board the flights. (Doc. No. 2-1 ¶ 104; Doc. No. 15 at 27:19–20.)

## PROCEDURAL HISTORY

On May 20, 2022, Farah was charged by Complaint with Passport Fraud, in violation of Title 18, United States Code, Section 1542. (Doc. No. 2.) On May 23, 2022, Farah made his initial appearance before Magistrate Judge Jon T. Huseby and the government moved for Farah's pretrial detention. (Doc. No. 6.) On May 23, 2022, U.S. Pretrial Services issued a Pretrial Services Report recommending Farah's pretrial detention. (Doc. No. 11.)

On May 25, 2022, an evidentiary hearing on the government's detention motion was held before Magistrate Judge David T. Schultz. (Doc. No. 22.) FBI Special Agent Travis Wilmer testified at the hearing. After considering the testimony and exhibits presented at the hearing, as well as the arguments of the parties, and the recommendation of U.S. Pretrial Services in favor of detention, Magistrate Judge Schultz ordered that Farah remain detained based on his risk of flight, in accordance with the factors set forth in 18 U.S.C. § 3142(g). (Doc. No. 10.) On May 31, 2022, the Court issued a written detention order. (Doc. No. 14.) On June 6, 2022, Farah filed objections to the detention order, asking this Court to revoke the detention order. (Doc. No. 17.) For the reasons set forth below, the Court should order that Farah remain in custody pending trial.

**ARGUMENT**

**I. Magistrate Judge Schultz Correctly Found That There Was No Combination Of Conditions That Would Assure Farah's Appearance**

This Court reviews *de novo* the factual findings and legal conclusions contained in Magistrate Judge Schultz's detention order. *United States v. Maull*, 733 F.2d 1479, 1484 (8th Cir. 1985). The Court should not revoke a detention order supported by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). The Court may consider the entire record before the Magistrate Judge, including the Pretrial Service Report prepared by U.S. Pretrial Services and the transcript of the May 25, 2022 detention hearing. (Doc. Nos. 11–12, 15); *see United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) ("[T]he district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist.").

Both the Pretrial Services Office and the Magistrate Judge properly concluded that Farah poses a risk of flight and that no combination of conditions would reasonably assure his future appearance before this Court. The nature and circumstances of the underlying offense, as well as the strength of the government's evidence, clearly supports Magistrate Judge Schultz's finding that Farah cannot be trusted to appear. Farah lied repeatedly on his passport application under penalty of perjury. He falsely claimed, among other things, that his passport was "lost," knowing full well that it had been seized by federal agents pursuant to a federal search warrant. (Doc. No. 2-1 ¶ 100; Doc. No. 15 at 27:2–4.) Farah also falsely represented

4

that he "could not find [the passport] anywhere." (Doc. No. 2-1 ¶¶ 101–02; Doc. No. 15 at 25:14–17.)

Farah has significant incentive to flee based on his present and potential criminal exposure. Not only is Farah charged with lying to the United States government in his U.S. passport application, but he is also the target of an investigation into his role in defrauding the Federal Child Nutrition Program and laundering program funds. At the time Farah applied for the passport, he was aware that he was the target of a federal investigation regarding his involvement in the scheme to fraudulently obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds. (Doc. No. 2-1 ¶¶ 95, 98.) In January 2022, Farah was put on notice that he was the target of a federal investigation into his misappropriation of Federal Child Nutrition Program funds. (*Id.* ¶¶ 82–86; Doc. No. 12 at 2.) Since January 2022, Farah's role in the scheme has been the subject of extensive media attention.

Farah has significant financial resources and access to substantial funds. For example, Farah and his companies received more than $32 million in Federal Child Nutrition Program funds between May 2020 and January 2022. (Doc. No. 2-1 ¶ 48.) Farah spent millions of dollars in Federal Child Nutrition Program funds to purchase real estate and luxury vehicles, including a house Savage, Minnesota; lakefront property in Prior Lake, Minnesota; a townhouse in Burnsville, Minnesota; commercial property in Louisville, Kentucky; and at least five vehicles, including a 2021 Porsche Macan and a 2022 Tesla. (*Id.* ¶¶ 51, 55, 61, 66–73, 80–81.)

Farah also has significant financial and personal ties to Kenya. Farah was raised in Kenya and has family in Kenya. He has significant financial investments in Kenya. Farah admitted to a co-conspirator that he had invested $6 million in Kenya over the past three years. (*Id.* ¶ 94.) Bank records show that Farah has wired more than $700,000 to entities in Kenya. (*Id.* ¶ 93.)

Considering Farah's motive to flee given his present and potential criminal exposure, his means to flee given his significant financial resources, his personal and financial ties to Kenya, and the strength of the evidence, Magistrate Judge Schultz correctly found that the preponderance of the evidence demonstrated that no combination of conditions would reasonably assure Farah's future appearance in this case. Magistrate Judge Schultz was amply justified in finding as such and in granting the government's motion for detention on that basis. Accordingly, the Court should uphold Magistrate Judge Schultz's order detaining Farah pending trial.

## II. Farah's Objections Do Not Merit Reconsideration Of Magistrate Judge Schultz's Detention Order

Farah's arguments to overturn Magistrate Judge Schultz's detention ruling lack merit. Magistrate Judge Schultz considered all of the facts and arguments contained in Farah's present objections. Farah asserts that Magistrate Judge Schultz erred by relying on a bond report that stated that Farah was arrested and by including reference to Farah's purchase of two international plane tickets, which Farah asserts are incorrect. (Doc. No. 17 at 1.) Farah also asserts that release with standard conditions would ensure Farah's appearance at future proceedings. (*See* Doc. No. 17 at 12–13.) But none of Farah's arguments negate the factors that make

6

him a flight risk; nor has he alleged any facts that suggest circumstances have changed since the detention hearing.

After considering extensive testimony and argument, Magistrate Judge Schultz rejected Farah's arguments for his pretrial release[1] and made a fully informed ruling that should not be set aside. (Doc. No. 15 at 67:5–69:3; Doc. No. 14). There is nothing in Farah's objections that warrants reconsideration of Magistrate Judge Schultz's conclusion that detention was warranted. The concerns that caused Magistrate Judge Schultz to order pretrial detention persist to this day: the strength of the case against him, his knowledge of a larger federal investigation into his role in the Federal Child Nutrition Program fraud scheme, his criminal exposure on both pending and potential charges, his coordination with his co-conspirator to obtain a passport under false pretenses on the same day, his access to significant financial resources, his purchase of flights to Nairobi, and his extensive personal and financial ties to Nairobi. (Doc. No. 14 at 2–4; Doc. No. 15 at 67:5–69:3.) Farah's proposed in-state travel, GPS monitoring, and passport restrictions are not conditions that would necessarily inhibit Farah's flight given his incentive to flee, his foreign contacts, and his significant financial resources. Regardless of his promises, once Farah crosses the border, neither the Court nor the government will have any recourse, short of extradition, to compel his return. In sum, nothing proposed by

---

[1] To the extent that Farah disputes the factual finding regarding his booking *two* one-way flights from Minneapolis-St. Paul International Airport to Nairobi, as Magistrate Judge Schultz's ruling at the detention hearing made clear, the Court determined that detention is warranted regardless of the second flight.

Farah necessitates the reversal of Magistrate Judge Schultz's finding that, based on the record and the 18 U.S.C. § 3142(g) factors, Farah poses a serious risk of flight and there is no combination of conditions that will reasonably assure his appearance.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Farah's motion without a hearing and order that Farah remain detained pending resolution of this matter.

Dated: June 21, 2022                    Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

BY: /s/ Chelsea A. Walcker
CHELSEA A. WALCKER
JOSEPH H. THOMPSON
HARRY M. JACOBS
Assistant United States Attorneys