UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM. NO. 22-CR-124 (NEB/TNL)

---

United States of America,

        Plaintiff,

v.

Abdiaziz Shafii Farah,

        Defendant.

**MOTION TO SUPPRESS EVIDENCE OBTAINED BY SEARCH AND SEIZURE**

---

## Introduction

Defendant Abdiaziz Farah, by and through his undersigned counsel, respectfully moves the Court for an Order suppressing two categories of search and seizure evidence:

1)     Evidence obtained from a search of Mr. Farah's residence in Savage Minnesota, conducted on January 20, 2022 pursuant to warrant, should be suppressed on the following two grounds:

    a. the warrant was overbroad and lacked particularity; and
    b. the items seized went beyond the scope of the warrant.

2)     Evidence obtained from searches of Mr. Farah's vehicles, searched and seized the same day at or near his residence, should be suppressed on the ground that the searches were conducted without process, without any applicable warrant exception, and without probable cause.

These motions are made on the Fourth Amendment to the United States Constitution, Rule 12 of the Federal Rules of Criminal Procedure, the files and records in

the case, the interests of justice, and such other and further points and authorities as may be subsequently presented to the Court.

The defense requests a hearing on the motion.

## Facts

On January 11, 2022, the Honorable Magistrate Judge Tony N. Leung issued two warrants. The first, the "residence search warrant", authorized the search of Mr. Farah's residence and the seizure of a number of general categories of items as potential evidence (Bates 191). That warrant did not purport to authorize the search or seizure of any vehicles. (*Id*). The second, the "vehicle seizure warrant", authorized the *seizure*—under the civil and/or criminal forfeiture statutes—of a 2021 GMC Sierra. (Bates 348). It did not authorize the search of the GMC Sierra or anything else.

Nevertheless, the government searched the residence and four vehicles parked nearby. The search of the residence and the search of the vehicles will be discussed in turn.

1. <u>The government's search warrant application</u>

Supporting the residential search warrant, FBI Special Agent Travis Wilmer supplied Magistrate Judge Leung a 37-page sworn affidavit on January 11, 2022. (Bates 199-236). Agent Wilmer also supplied This Court (the Magistrate Judge Leung) two attachments: "Attachment A-3", a two-page document describing the place to be searched, and "Attachment B", a seven-page document describing the list of items to be seized. (Bates 237-245).

This Court issued the Search and Seizure Warrant the same day. This Court identified the location to be searched at "Attachment A-3, incorporated here" and the location to be seized at "Attachment **B-3**, incorporated here" (emphasis added).

### 2. The government's seizure warrant application

The same day the government applied for a search and seizure warrant for the residence (January 11, 2022), the government also applied for a *seizure* warrant for a 2021 GMC Sierra (the "vehicle seizure warrant"). In its warrant application, the government claimed that the vehicle was subject to forfeiture under both the civil forfeiture and criminal forfeiture statutory provisions, and seizure was thus appropriate. This is what is colloquially known as a "dual-purpose seizure warrant" or a "hybrid seizure warrant".

Supporting the vehicle seizure application, Agent Wilmer supplied Magistrate Judge Leung a 14-page affidavit discussing probable cause to seize 11 bank accounts and 4 vehicles owned by a variety of entities. The government alleged that 1 of the 4 vehicles, the GMC Sierra, was owned by Mr. Farah. Agent Wilmer also "attached and incorporated" the residential search warrant application in his application for the vehicle seizure warrant. (Bates 294-308, 309-345).

Also on January 11, 2022, This Court issued the vehicle seizure warrant, finding there was probable cause to seize the GMC Sierra. (Bates 346). The warrant was not a search warrant and did not authorize a search of the vehicle or any other property. (*Id*.).

On January 20, 2022, the government executed the search warrant at Mr. Farah's residence. Apparently believing it had a general warrant, agents seized a great number of items, including many items not identified in the application or warrant. Those will be discussed in the following section of this motion.

While executing the residence search warrant, government agents saw the GMC parked in the driveway of the house, immediately next to the garage. (Bates 278, 282). Agents also identified three other vehicles parked inside the garage. While executing the search warrant, the agents searched the inside of all four vehicles to obtain evidence.

From the GMC parked on the driveway, Agents seized cash, documents, and a passport. Agents also seized documents from all three vehicles parked inside of the garage (Bates 261, 264, 267-68) and a purse from the Nissan Murano in the garage (Bates 264, 278). The government then seized and towed all four vehicles (Bates 279).

## Argument

1. <u>The search of the residence was unconstitutional, and the proceeds should be suppressed.</u>

The search of the residence and items within was unconstitutional for two reasons. First, the warrant both *lacked particularity* and was *overbroad* because it did not particularly identify the items to be seized, instead listing virtually all imaginable items as to be seized. Second, the government exceeded the scope of the warrant by searching locations not described in the warrant and seizing items not identified.

### a. *The search warrant lacked particularity and was overboard*

All evidence obtained during the search should be suppressed because the warrant did not describe with sufficient particularity the things to be seized and the places to be searched.

Not only did the warrant incorporate "Attachment B-3" as the list of items to be seized when Attachment B-3 did not exist—but, assuming *arguendo* the warrant referred to Attachment B, it simply authorized seizure of too broad a swath of items seized to be constitutional. The seven-page long Attachment describing the list of items to be seized appeared to be the same document applied to all subjects facing a search warrant.

With 20 categories and 21 sub-categories of items identified, the warrant appears to be designed to be as broad as possible. For some examples, Attachment B identifies as among the items to be seized, the following:

> "3. All personal financial documents, records and information for Mahad Ibrahim, Abdiaziz Farah, Abdimajid Mohamed Nur, Said Farah, Mohamed Ismail, Abidwahib Aftin, including but not limited to the following:…
>
> [It then lists 4 sub-categories of personal financial documents.]"

Other similarly broad categories of information include:

> "7. All documents identifying potential victim companies, including but not limited to financial records, and business documents."
>
> "9. Correspondence, memos, reports, notes, and e-mails pertaining to the business and personal financial affairs described above."
>
> "10. All documents and records tending to show the identities of associates or co-conspirators, or tending to show the location of assets including

notes, telephone messages, telephone numbers, email addresses, address books, and appointment books."

The document also uses the phrase "including but not limited to" multiple times throughout (see, e.g., paragraphs 3, 4, 4b, 4d, 7, 12, and 13).

The extremely broad nature of the warrant makes the search constitutionally flawed. "Prohibiting the issuance of general search warrants, the Fourth Amendment requires that a search warrant describe and identify the items to be seized with particularity." *United States v. Cartier*, 543 F.3d 442, 447 (8th Cir. 2008) (citing *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008)). This warrant—commanding the officers to seize essentially all documents—falls short of that standard.

Compounding that shortfall, the warrant—instead of telling officers what to seize— required them to exercise discretion as to what is to be seized. For example, the warrant required officers to make judgments as to who co-conspirators were, who "potential victim companies" were, and what documents provided "[i]nformation that constitutes evidence of meals served to underprivileged children." A warrant must "sufficiently direct[] officers which items to seize so as to limit their discretion." *United States v. Timley*, 443 F.3d 615, 623 (8th Cir. 2006). Here, instead of describing the officers what to seize, the warrant essentially said *seize whatever is important*. It was a general warrant.

> General warrants, of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by requiring a `particular description' of the things to be seized." *Coolidge* v. *New Hampshire*, 403

6

> U.S. 443, 467 (1971). This requirement "`makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *Stanford* v. *Texas*, 379 U.S. 476, 485 (1965), quoting *Marron* v. *United States*, 275 U.S., at 196.

*Andresen v. Maryland*, 427 U.S. 463, 480 (1976).

This warrant failed the basic test articulated in *Andresen*. All evidence taken therein should be suppressed.

### b. The items seized fell outside the scope of the warrant.

Illustrating (and magnifying) the "general warrant" problem is the fact that when the agents executed the warrant, they went beyond the scope of even the extremely broad warrant and seized property not identified as an item to be seized. For some examples:

- the government seized the vast majority of the clothing in the house, though the warrant did not authorize this.

- the government seized cash, jewelry, and purses, though the warrant did not authorize this.

- the government seized four vehicles—the GMC discussed above and three other vehicles, seized without process. (Bates 279). Agents were aware they needed a warrant to seize the vehicles—as can be seen by them attaining a seizure warrant for the GMC—yet they seized the other vehicles without process regardless.

- And, crucially for this prosecution, the government seized a passport card, though the warrant did not authorize this (the warrant authorized seizure of "Records reflecting business or personal travel, including passports") (Bates 293). The government seized one passport book, which falls into this category as it can reflect a history of when a person has traveled, but the passport *card* it seized—which does not reflect a history—does not fall into this category.

In total, these seizures showed that law enforcement was not attempting to make carefully limited seizures to comply with a specifically delineated warrant. Instead, agents were simply taking everything.

Given the flagrant disregard of the search warrant, Mr. Farah respectfully submits even if the search and warrant was otherwise valid, the officers' actions converted the search into "an impermissible general search and thus requires the suppression or return of all evidence seized during the search." *See Marvin v. United States*, 732 F.2d 669, 674-75 (8th Cir. 1984).

Accordingly, Mr. Farah respectfully requests the Court issue an Order finding the search warrant overbroad and lacking particularity, finding the executing agents seized items beyond the scope of the warrant, and ordering the suppression of all evidence seized.

2. <u>The search of the vehicles were unconstitutional warrantless searches, and the proceeds should be suppressed.</u>

The analysis as to the searches of the vehicles is simple. Law enforcement searched Mr. Farah's vehicles and seized what it believes to be evidence. It conducted these searches without a valid warrant—neither the residential search warrant nor the vehicle seizure warrant authorized these searches. Accordingly, they are forbidden by the Fourth Amendment to the United States Constitution—which, of course, declares warrantless searches presumptively unconstitutional. "[E]xcept in certain carefully defined classes of cases a search of private property without proper consent is

unreasonable unless it has been authorized by a search warrant." *Camara v. Municipal Court*, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). No exception to the warrant requirement applies here—indeed, in 2018, the Supreme Court affirmed that the automobile exception to the warrant requirement does not permit law enforcement to search a vehicle on the curtilage of a home without a search warrant for that vehicle. *Collins v. Virginia*, 138 S. Ct. 1663 (2018).

The warrantless searches of all four vehicles—the three vehicles parked inside the garage and the GMC parked outside—were unconstitutional as to each vehicle. The remedy for these unjustifiable warrantless searches is suppression of all items obtained from all vehicles.

## **CONCLUSION**

Mr. Farah respectfully submits the Court issue an Order that the above-discussed obtained by unlawful search and seizure be suppressed.

Respectfully submitted,

Dated: July 15, 2022

/s/ Ian S. Birrell
Andrew S. Birrell (Attorney No. 133760)
Ian S. Birrell (Attorney No. 0396379)
**Birrell Law Firm PLLC**
333 South 7th Street, Suite 3020
Minneapolis, MN 55402
Phone: (612) 238-1939
andy@birrell.law | ian@birrell.law
*Attorneys for Defendant*

9