## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                          Case No. 22-cr-124(1) (NEB/TNL)

        Plaintiff,

v.                                                            **ORDER**

Abdiaziz Shafii Farah,

        Defendant.

---

Chelsea A. Walcker, Craig R. Baune, Harry Jacobs, Joseph Scott Teirab, Joseph H. Thompson, and Matthew S. Ebert, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Andrew S. Birrell and Ian S. Birrell, Birrell Law Firm PLLC, 333 South Seventh Street, Suite 3020, Minneapolis, MN 55402 (for Defendant).

---

This matter is before the Court on Defendant Abdiaziz Shafii Farah's "Motion for Reconsideration of Detention Pursuant to 18 U.S.C. 3142(f)(2)(B) and Demand for Speedy Trial," ECF No. 132. The Court finds that the matter is suitable for determination without a hearing and is submitted on the papers. *See* ECF No. 137 ("The Court will endeavor to rule on this motion without a hearing; therefore, the parties should undertake to provide the Court with the information necessary to its determination in their written submissions."). For the reasons set forth below, Defendant's motion is denied.

## I. BACKGROUND

In May 2022, Defendant was charged by Complaint with making a false statement in a passport application in violation of 18 U.S.C. § 1542. *See generally* ECF No. 2. At

Defendant's initial appearance, the Government moved for pretrial detention.  *See generally* ECF Nos. 6, 8.

United States Probation and Pretrial Services ("Pretrial Services") "recommended that [Defendant] be detained pending trial."  Det. Order at 4, ECF No. 14.  Pretrial Services "determined that, based in part on [Defendant's] ties to Kenya and the nature and circumstances of the offense, there [wa]s no condition or combination of conditions that w[ould] reasonably assure [Defendant's] appearance at future court proceedings."  Det. Order at 4; *see also* Def.'s Obj. at 4-6 (summarizing portions of Pretrial Services report), ECF No. 17.

### A. Preliminary & Detention Hearing

At the preliminary and detention hearing, a magistrate judge concluded that there was probable cause to believe Defendant committed the charged offense.  Det. Order at 1; *see generally* ECF No. 10.  The magistrate judge also found "that there [we]re no conditions or combination of conditions that w[ould] reasonably ensure [Defendant's] appearance at future court proceedings" and granted the Government's motion for detention.  Det. Order at 1-2.

Among other findings, the magistrate judge relied on testimony at the hearing that Defendant "applied for a new U.S. passport following the seizure of his U.S. passport card and book by federal agents," a seizure which was "part of an investigation of [Defendant's] involvement in an alleged massive scheme to fraudulently obtain and misappropriate millions of dollars in [f]ederal [c]hild [n]utrition [p]rogram funds."  Det. Order at 2.  The magistrate judge found that Defendant "obtained a new passport on the same day he applied

for one" and, "[a]t the time [he] allegedly fraudulently obtained [the] passport, he was aware that he was the target of a federal investigation regarding his involvement in the alleged scheme to fraudulently obtain and launder [f]ederal [c]hild [n]utrition [p]rogram funds." Det. Order at 2.

The magistrate judge further found that, in March 2022, Defendant booked at least one[1] one-way flight to Nairobi, Kenya, but did not board the flight. Det. Order at 3. The magistrate judge found that Defendant "has significant personal and financial ties to Kenya." Det. Order at 3. Defendant "was raised in Kenya and has family residing there," and "also sent a text message to an associate claiming to have $6 million worth of investments in Kenya." Det. Order at 3.

The magistrate judge additionally found that Defendant "has significant financial resources." Det. Order at 3. Based on exhibits received and testimony at the hearing, the magistrate judge found that Defendant "has received millions of dollars in recent years alone" and "made numerous large wire transfers to foreign bank accounts." Det. Order at 3.

The magistrate judge concluded that Defendant "has a motive to flee, a means to flee, and a place to flee, as demonstrated by [his] present and potential criminal exposure, his significant financial resources, and his personal and financial ties to Kenya." Det. Order at 3.

---

[1] "The Detention Order states that [Defendant] booked two flights to Kenya." Order Denying Mot. at 3 n.2, ECF No. 32 (citing Det. Order at 3). "The record is unclear on whether [Defendant] booked one or two flights." Order Denying Mot. at 3 n.2.

**B. Objections to Detention Order**

Defendant objected to the magistrate judge's order detaining him pending trial. *See generally* Def.'s Objs. Defendant asserted there were "critical factual errors" related to his appearance in connection with the charge and the contention that he purchased "two international plane tickets in a short time." Def.'s Objs. at 1 (emphasis omitted). Defendant pointed out that he voluntarily surrendered to law enforcement and the "uncontroverted" evidence in the record was that he had only booked a single flight. Def.'s Objs. at 10; *see* Def.'s Objs. at 5, 6, 10, 11; *see also* Order Denying Mot. at 3 n.1 (noting Pretrial Services addendum corrected error that Defendant had been "arrested, when in fact, he self-surrendered").

Defendant also asserted that his "personal factors . . . strongly support[ed] release," citing his residence in the United States for nearly all of his life[2] along with his wife and "two very young children" as well as his "personal property, real property, and community ties." Def.'s Objs. at 1-2. Defendant noted that he had been "under a highly scrutinized, public federal investigation since January, and has remained in the jurisdiction." Def.'s Objs. at 2. Defendant noted that his pretrial risk assessment score "place[d] him at the lowest risk category, with a 1% chance of failure to appear." Def.'s Objs. at 2.

---

[2] There are conflicting statements in the record regarding how long Defendant has lived in the United States. *Compare, e.g.*, 5/25/2022 Hrg. Tr. 62:25 ("He's lived—he's lived here since he was 2 years old."), ECF No. 15; Def.'s Objs. at 1 (Defendant "has resided in the United States since he was two years old."), *with* Order Denying Mot. at 3 (Defendant "moved to Kenya when he was two years old and lived there for approximately 15 years."); Mot. to Reconsid. at 10 (Defendant "is a naturalized United States citizen who was born in Somalia in 1988, was brought to a Kenyan refugee camp in about 1990, and immigrated to Minnesota in 2005. He has lived here since."), 13 (Defendant "has lived in the United States for over fifteen years."); *see also* ECF No. 11 at 1.

The district judge heard oral argument on Defendant's objections, which she construed as a motion to revoke or amend the Detention Order under 18 U.S.C. § 3145(b). Order Denying Mot. at 1, 4; *see generally* ECF No. 31.  The district judge conducted a *de novo* review of the Detention Order, considering the record before the magistrate judge, including the report and addendum prepared by Pretrial Services and the transcript of the hearing before the magistrate judge.  The district judge likewise concluded that Defendant "poses a risk of flight and that no condition or combination of conditions will reasonably ensure his future appearance" and ordered that he be detained.  Order Denying Mot. at 2, 4.

The district judge noted that "[t]he [G]overnment appears to have substantial evidence of [Defendant's] guilt of the underlying offense," citing the affidavit in support of the Complaint.  Order Denying Mot. at 3 (citing ECF No. 2-1)).  The district judge pointed out that "[i]n January 2022, [Defendant] was notified that he [wa]s the target of a larger federal fraud investigation that ha[d] not yet been charged."  Order Denying Mot. at 3 (footnote omitted).  The district judge pointed out that Defendant's "financial resources give him the means to flee," and, "[i]n March, [Defendant] booked a one-way flight to Nairobi, Kenya, but he did not board it."  Order Denying Mot. at 3 (footnote omitted).  The district judge noted that "[t]he record [wa]s unclear on whether [Defendant] booked one or two flights," but "[t]he discrepancy ma[de] no difference to the [district judge's] decision." Order Denying Mot. at 3 n.2.

Recognizing that Defendant's "wife and two small children live in Minnesota," the district judge simultaneously acknowledged that Defendant "also has significant ties to

Kenya." Order Denying Mot. at 3. Defendant "moved to Kenya when he was two years old and lived there for approximately 15 years." Order Denying Mot. at 3. Defendant's father lives in Kenya and Defendant visited his father in Kenya in December 2021. Order Denying Mot. at 3. Defendant also "claimed to have invested $6 million in Kenya over the past three years." Order Denying Mot. at 3.

"Compelling to [the district judge wa]s the fact of a much larger fraud investigation, the FBI search, the nature of the underlying charge and its temporal proximity to that search, and the booked flight." Order Denying Mot. at 3-4. The district judge explained that Defendant was "the target of a well-publicized and large government fraud investigation," and, "[a]fter the FBI searched his home and car and seized his passport and passport card, [Defendant] booked a flight to Kenya and applied for a new passport." Order Denying Mot. at 4. "The obvious inference [wa]s that [Defendant] was planning to flee the United States to evade prosecution for the underlying fraud scheme." Order Denying Mot. at 4. The district judge could "draw no other conclusion than that [Defendant] would engage in a similar plan if released." Order Denying Mot. at 4. The district judge concluded that "[t]he evidence shows not just a risk of flight, but a demonstrated plan of flight and actions taken to carry out that plan." Order Denying Mot. at 4.

### C. Indictments & Complex-Case Designation

While Defendant's objections were pending, he was indicted on one count of making a false statement in a passport application in violation of 18 U.S.C. § 1542. ECF No. 22.

6

On September 13, 2022, a federal grand jury returned a series of six indictments charging more than 40 individuals related to the prosecution of an alleged massive fraudulent scheme to obtain and misappropriate more than $250 million in federal child nutrition program funds.  The Government has alleged that these individuals fraudulently obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the costs of serving meals to children.  The charges in these cases include, among other things, conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, money laundering, conspiracy to commit federal programs bribery, and federal programs bribery.  This is one of those six cases.

The Superseding Indictment in this case added seven co-defendants and 42 new charges.  *See generally* ECF No. 57.  As to Defendant, the Superseding Indictment again charged Defendant with one count of making a false statement in a passport application in violation of 18 U.S.C. § 1542 along with 23 new counts: one count of wire fraud conspiracy in violation of 18 U.S.C. §§ 371 and 1343; seven counts of wire fraud in violation of 18 U.S.C. § 1343; one count of conspiracy to commit federal programs bribery in violation of 18 U.S.C. § 666(a)(2); two counts of federal programs bribery in violation of 18 U.S.C. § 666; one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and eleven counts of money laundering in violation of 18 U.S.C. § 1957.  When Defendant made his initial appearance in connection with the Superseding Indictment, he was ordered detained based on the previous order.  ECF No. 95.

The Government subsequently moved to designate this case as complex for purposes of the Speedy Trial Act.  *See generally* ECF No. 111.  "In its motion, the

Government represent[ed] that this case is unusual and complex in that the indicted conduct involves the prosecution of a massive fraudulent scheme to obtain and misappropriate more than $250 million in federal child nutrition program funds." ECF No. 125 at 1. "The Government report[ed] that the discovery in this matter is exceptionally voluminous and includes millions of pages of investigative materials." ECF No. 125 at 1.

> The grand jury issued more than 600 subpoenas, and the responses to these subpoenas include financial statements and other records for hundreds of bank accounts and credit card merchant accounts. The Government interviewed hundreds of witnesses and individuals involved in the fraud scheme, and will be producing hundreds of reports documenting those interviews. The Government obtained and executed physical search warrants for 32 businesses and residences, during which the Government seized approximately 380 electronic devices, including computers, laptops, and cell phones. The Government also obtained warrants to search more than 45 email accounts, through which the Government obtained more than 250,000 emails relevant to the investigation.

ECF No. 125 at 1-2 (quotations and citations omitted).

The Court granted the Government's motion in part and designated this matter and the related matters as complex under 18 U.S.C. § 3161(h)(7)(B)(ii). The Court found that "[g]iven the large volume of discovery, the nature of the evidence collected, and the multiple issues involved in the discovery process, as well as the sheer number of defendants, this case and the related cases are so complex that it is unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the time limits set forth in the Speedy Trial Act." ECF No. 125 at 3-4. "The Court further f[ound] that, pursuant to 18 U.S.C. § 3161(h)(7)(A), the ends of justice served by making this designation and granting . . . [a] continuance outweigh the best interests of the public and

8

Defendants in a speedy trial and the failure to grant a continuance would deny the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." ECF No. 125 at 4.  The Court directed the parties to meet and confer and submit a proposed case management schedule for the completion of pretrial proceedings on or before November 4, 2022.  ECF No. 125 at 4.

## II. ANALYSIS

Defendant requests reconsideration of his detention pursuant to 18 U.S.C. §§ 3142(f) and (i).  Defendant also asserts his release is required by the Fifth and Sixth Amendments to the United States Constitution.  According to Defendant, "the detention analysis has changed markedly" in light of the Superseding Indictment and the complexity of the alleged fraud.  Mot. for Reconsid. at 1, ECF No. 132.  The Government opposes Defendant's request.  *See generally* ECF No. 144.

### A.  Recommendation of Pretrial Services

Following Defendant's request for reconsideration, the Court received an updated report from Pretrial Services.  *See generally* ECF No. 141.  The report, filed under seal but made available to counsel, expressed concerns about the effectiveness of location monitoring; the nature of the passport charge and allegations that Defendant applied for a new passport card in March 2022, indicating the prior card had been lost when in fact it had been seized by the FBI; Defendant's ties to Kenya, both personal and financially; and Defendant's substantial unexplained assets.  Pretrial Services recommended against Defendant's release.

**B.  Section 3142(f)**

Section 3142(f) permits a detention hearing to be reopened when there is information that was not known at the time of the hearing "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [the person detained] . . . and the safety of any other person and the community."  18 U.S.C. § 3142(f).  Its function "is to allow parties to present new information that increases the likelihood a defendant would appear in court or decrease[s] the potential danger a defendant poses to an individual or the community as a whole."  *United States v. White*, No. 19-cr-204 (ECT/BRT), 2020 U.S. Dist. LEXIS 63741, at *4 (D. Minn. Apr. 1, 2020); *see also United States v. Elburki*, No. 19-00406-01-CR-W-RK, 2022 WL 1307092, at *2 (W.D. Mo. May 2, 2022) ("By its express terms, [§ 3142(f)] applies to reconsideration of a detention order and provides that reconsideration is permissible 'only when there is new information that would materially influence the judgment' concerning potential flight risk and potential harm to any other person or the community." (quoting *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003)).

Defendant has not presented new information that alters the individualized assessment based on the factors set forth in 18 U.S.C. § 3142(g) of the Bail Reform Act.  Under § 3142(g), the Court considers (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Defendant's arguments go the first factor—the nature and circumstances of the offense charged.  Defendant asserts that "the trajectory" of this case is now "completely different" in light of the Superseding Indictment and he "faces a remarkably fact-intensive and lengthy prosecution."  Mot. for Reconsid. at 3.  Defendant also points out that, of the 47 individuals initially charged in connection with the alleged fraud, only two were detained.

The issuance of the Superseding Indictment does not have a material bearing on the issue of whether there are conditions that will reasonably assure Defendant's appearance and the prior findings that there is no condition or combination of conditions that would reasonably assure that Defendant would not flee.  This Court agrees with the conclusion of the district court that "[t]he obvious inference" to be drawn from Defendant's actions following the seizure of his passport card by the FBI "is that [he] was planning to flee the United States to evade prosecution for the underlying fraud scheme."  Order Denying Mot. at 4.  If anything, the formalization of charges related to the alleged fraudulent scheme to obtain and misappropriate millions of dollars in federal child nutrition funds through the Superseding Indictment and the serious nature of those charges decrease, rather than increase, the likelihood that Defendant would appear in Court and underscore the concerns for risk of flight previously expressed by both the magistrate judge and district judge.  Moreover, "[a]lthough the Bail Reform Act identifies several factors to consider in the release or detention determination, the treatment of codefendants is not one of them."  *Elburki*, 2022 WL 1307092, at *4 (citing 18 U.S.C. § 3142(g)).  "[T]he treatment of

codefendants has no material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of *Defendant*." *Id.* (emphasis added).

### C. Section 3142(i)

Section 3142(i) allows for the detained person's "temporary release" upon determining "such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "[T]he plain language of this provision reveals . . . it applies in rare circumstances only: when release is 'necessary' for defense preparations or when there is another 'compelling reason.'" *United States v. Villegas*, 587 F. Supp. 3d 1010, 1012 (C.D. Cal. 2020); *see also, e.g.*, *United States v. McKnight*, No. CR18-16 TSZ, 2020 WL 1872412, at *2 (W.D. Wash. Apr. 15, 2020) ("The relief authorized by § 3142(i) is to be used 'sparingly.'"). "A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i)." *United States v. Clark*, 448 F. Supp. 3d 1152, 1155 (D. Kan. 2020); *see also, e.g.*, *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013); *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D. N.Y. 2011).

"Courts considering whether pretrial release is 'necessary' under § 3142(i) have considered: (1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing while incarcerated." *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA, ___ F. Supp. 3d ____, 2020 WL 1639855, at *4 (D. Nev. Apr. 2, 2020) (citing *United States v. Cecrle*, No. 2:12-CR-400-

JAD-GWF, 2014 WL 31674, at *4 (D. Nev. Jan. 3, 2014)); *see also Buswell*, 2013 WL 210899, at *6-7; *Dupree*, 833 F. Supp. 2d at 248-50.

Defendant asserts in summary fashion that "[g]iven the unique facts of th[is] case, [he] cannot fully participate in his defense while detained," and "[t]he alternative, his attorneys reviewing millions of pages of documents with him over Zoom, is just not realistic." Mot. for Reconsid. at 13. Yet, the complexity of the case and volume of information at issue "alone[] are not sufficiently compelling to find that [a defendant's] release is 'necessary' for the preparation of his defense." *Dupree*, 833 F. Supp. 2d at 249; *see also Cecrle*, 2014 WL 31674, at *5 ("Heightened case complexity is not a basis for pretrial release."). In *United States v. Petters*, the defendant was charged in connection with "his alleged execution of perhaps the largest fraud scheme ever perpetrated in Minnesota, and one of the largest in this country's history." No. 08-cr-364 (RHK/AJB), 2009 WL 205188, at *1 (D. Minn. Jan. 28, 2009) (quotation omitted). "A grand jury later returned a 20-count indictment against [the d]efendant charging him with mail fraud, wire fraud, conspiracy, and money laundering." *Id.* In rejecting the defendant's argument that the complexity of the case rendered temporary release necessary for the preparation of his defense under § 3142(i), the *Petters* court held that "[w]hile this case may, in fact be complicated and require [the d]efendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify [the d]efendant's release." *Id.* at *2; *see also, e.g.*, *United States v. Birbragher*, No. 07-CR-1023-LRR, 2008 WL 2246913, at *1 (N.D. Ia. May 29, 2008) (denying request for release under § 3142(i) where defendant asserted he was unable to adequately prepare his

defense while detained due to the "extremely complicated and document-intensive [nature of the] case").  The *Petters* court went on to state that "accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial," which it described as "clearly an absurd result."  2009 WL 205188, at *2.  The reasoning of the *Petters* court applies with equal force to this case.  *See also United States v. Stanford*, 722 F. Supp. 2d 803, 811 (S. D. Tex. 2010) ("Stanford essentially argues that he must be released from pretrial detention because of the complexity of the case and the enormous volume of documents involved.  The *Petters* court aptly explained the incongruity of such a proposition . . . .").

Based on the record before the Court, Defendant has not shown that pretrial release is "necessary" for him to assist in the preparation of his defense.

### D. Constitutional Arguments

In addition to his arguments under § 3142(f) and (i), Defendant also asserts that his continued detention violates his constitutional rights under the Fifth and Sixth Amendments.

### 1. Due Process Under the Fifth Amendment

Defendant asserts that he has been detained for more than four months and the complexity of this case means any trial "will be a long time from now."  Mot. for Reconsid. at 8.

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.  "An individual may be detained prior to trial without violating . . . [the Fifth Amendment] so long as that

confinement does not amount to 'punishment of the detainee.'"  *United States v. Rush*, No.

S1-4:14 CR 88 RWS(SPM), 2017 WL 6541436, at *3 (E.D. Mo. Dec. 1, 2017) (quoting

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979)), *report and recommendation adopted*, 2017 WL

6550680 (E.D. Mo. Dec. 21, 2017); *see also, e.g.*, *United States v. Stanford*, 394 F. App'x

72, 74 (5th Cir. 2010) (per curiam); *Buswell*, 2013 WL 210899, at *8.  "[W]hile pretrial

detention involves incarceration and necessarily a great diminution of personal liberty, it

is not punishment if it serves a legitimate regulatory purpose which outweighs its punitive

aspects and is not excessive in relationship to that purpose."  *United States v. Maull*, 773

F.2d 1749, 1485 (8th Cir. 1985); *cf. United States v. Salerno*, 481 U.S. 739, 746-748 (1987)

("We conclude, therefore, that the pretrial detention contemplated by the Bail Reform Act

is regulatory in nature, and does not constitute punishment before trial in violation of the

Due Process Clause."); *United States v. Archambault*, 240 F. Supp. 2d 1082, 1084-85 (D.

S.D. 2002) (*Salerno* "held that limited pre-trial detention does not violate due process so

long as it is 'regulatory' and 'not penal'").

"Excessively prolonged detention may become so unreasonable in relation to the

regulatory goals of detention that it violates due process."  *Buswell*, 2013 WL 210899, at

*8 (quotation omitted); *see also Archambault*, 240 F. Supp. 2d at 1085 ("Court have held

that prolonged pre-trial detention may become excessive and consequently punitive so as

to offend due process constraints." (citing cases)); *cf. Salerno*, 481 U.S. at 747 n.4 (taking

"no view as to the point at which detention in a particular case might become excessively

prolonged, and therefore punitive, in relation to Congress' regulatory goal").  "[T]he due-

process limit on the duration of preventative detention requires assessment on a case-by-

case basis, for the clause establishes no specific limit on the length of pretrial confinement." *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989) (footnotes omitted); *see also, e.g.*, *Rush*, 2017 WL 6541436, at *4; *Buswell*, 2013 WL 210899, at *8; *Archambault*, 240 F. Supp. 2d at 1085. "Length of detention alone is not dispositive and carries no fixed weight in the review process." *Archambault*, 240 F. Supp. 2d at 1085; *accord Buswell*, 2013 WL 210899, at *8. "Length of detention 'will rarely by itself offend due process.'" *Buswell*, 2013 WL 210899, at *8 (quoting *United States v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993)).

Courts have considered several non-exclusive factors, articulated in different ways, when determining whether continued pretrial detention would violate due process, including "the strength of the evidence justifying detention, the government's responsibility for the delay in proceeding to trial, and the length of the detention itself." *United States v. Briggs*, 697 F.3d 98, 101 & n.1 (2d Cir. 2012) (noting test has sometimes been articulated in four parts to include "the gravity of the charges" and reasoning "[b]ecause Congress has required courts to consider 'the nature and circumstances of the offense charged' as part of their inquiry into the strength of the evidence justifying detention, *see* 18 U.S.C. § 3142(g)(1), we feel that no substance is lost, and some clarity is gained, by stating the standard in three parts"); *accord United States v. Williams*, 736 F. App'x 267, 271 (2d Cir. 2018) (summary order); *see also, e.g.*, *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) ("[I]n evaluating whether a due process violation has occurred, we weigh the following factors: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act."); *compare with, e.g.*, *Hare*, 873 F.2d at 801

16

(considering "not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay" (footnote omitted)); *Rush*, 2017 WL 6541436, at *4 ("Courts have developed and applied the following non-exclusive factors when deciding whether continued pretrial detention would violate due process: (1) the non-speculative length of expected confinement; (2) the extent to which the government bears responsibility for delay; (3) the gravity of the charges; and (4) the strength of the evidence justifying detention including the existence of any rebuttable presumption for detention.").

Beginning with the length of detention and the Government's contribution to the delay, Defendant has now been detained for five months, which, although not insignificant to Defendant and his family, is far less than the 31 months in the case of *United States v. Hofstetter*, No. 3:15-CR-27-TAV-CCS, 2017 WL 4079181 (E.D. Tenn. Sept. 14, 2017), that Defendant relies upon. Defendant has not established dilatory action by the Government. Nor has Defendant put forth any evidence indicating that any delay is attributable to anything other than the complexity of this case. As stated above, in moving to designate this case as complex for purposes of the Speedy Trial Act, the Government represented that

> discovery in this matter is exceptionally voluminous and
> includes millions of pages of investigative materials. The
> grand jury issued more than 600 subpoenas, and the responses
> to these subpoenas include financial statements and other
> records for hundreds of bank accounts and credit card merchant
> accounts. The Government interviewed hundreds of witnesses
> and individuals involved in the fraud scheme, and will be
> producing hundreds of reports documenting those interviews.
> The Government obtained and executed physical search
> warrants for 32 businesses and residences, during which the
> Government seized approximately 380 electronic devices,
> including computers, laptops, and cell phones. The
> Government also obtained warrants to search more than 45
> email accounts, through which the Government obtained more
> than 250,000 emails relevant to the investigation.

ECF No. 125 at 1-2 (quotations and citations omitted). The Court ultimately designated this case (as well as the related cases) as complex under 18 U.S.C. 3161(h)(7)(B)(ii) due to the large volume of discovery, the nature of the evidence collected, and the multiple issues involved in the discovery, finding these cases "so complex that it is unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the time limits set forth in the Speedy Trial Act." ECF No. 125 at 3-4. The Court "further f[ound] that, pursuant to 18 U.S.C. § 3161(h)(7)(A), the ends of justice served by making this designation and granting . . . [a] continuance outweigh the best interests of the public and Defendants in a speedy trial and the failure to grant a continuance would deny the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." ECF No. 125 at 4. The time for objecting to this Court's order has passed and there was no objection by Defendant. *See* Fed. R. Crim. P. 59(a); D. Minn. LR 72.2(a)(1). "When the complexity of the case is a reason for the length of the detention, the detention continues to be regulatory in nature rather than penal." *Stanford*, 722 F. Supp.

18

2d at 810 (citing *Hare*, 873 F.2d at 801); *accord United States v. Ashley*, No. 4:20-cr-318-ALM-KPJ, 2022 WL 1046363, at *5 (E.D. Tex. Apr. 7, 2022). "[T]he application of the complex-trial exception to the Speedy Trial Act does not by itself change the regulatory nature of pretrial detention." *Hare*, 873 F.2d at 801; *accord Stanford*, 722 F. Supp. 2d at 810.

As to the evidence supporting detention, this is Defendant's second challenge to his pretrial detention based on the conclusion that there is no conditions or combination of conditions that will reasonably ensure his appearance at future court proceedings. "When the judge finds that no condition can reasonably prevent defendant's flight, he or she is empowered to detain. Assuring appearance at trial long has been a proper concern of district courts." *Maull*, 773 F.2d at 1485. As outlined in greater detail above, the evidence underlying the findings that Defendant presents a significant risk of flight include the nature and circumstances of the passport offense, Defendant's awareness that he was the target of a large federal fraud investigation, his significant financial resources, his significant ties to Kenya, and "his demonstrated plan of flight and actions to carry out that plan" by applying for a new passport and booking a one-way flight to Kenya after his passport card was seized by the FBI. Gov't Opp'n at 12. The magistrate judge who ordered detention initially concluded that Defendant "has a motive to flee, a means to flee, and a place to flee, as demonstrated by [his] present and potential criminal exposure, his significant financial resources, and his personal and financial ties to Kenya." Det. Order at 3. The district judge reviewing that order similarly concluded that "[t]he obvious inference [wa]s that [Defendant] was planning to flee the United States to evade

19

prosecution for the underlying fraud scheme" and could "draw no other conclusion than that [Defendant] would engage in a similar plan if released."  Order Denying Mot. at 4. The district judge likewise concluded that "[t]he evidence shows not just a risk of flight, but a demonstrated plan of flight and actions taken to carry out that plan."  Order Denying Mot. at 4.

Based on the foregoing, the Court concludes that Defendant's continued pretrial detention is reasonably related to the legitimate government interest of assuring his appearance at trial, and the length of his detention does not violate his right to due process under the Fifth Amendment.

### 2.  Equal Protection Under the Fifth Amendment

Defendant additionally asserts that his continued detention based, in whole or in part, on his national origin is discriminatory and violates his right to equal protection under the Fifth Amendment.  Defendant asserts that the Government "weaponized the fact that he was born abroad" in arguing for detention.  Mot. for Reconsid. at 11.

"The Fifth Amendment does not contain an express equal protection clause. Nevertheless, it prohibits discrimination that is so unjustifiable as to be in contravention of due process."  *United States v. Wynde*, 579 F.2d 1088, 1092 (8th Cir. 1978); *see also, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017) (equal-protection guarantee is "implicit in the Fifth Amendment's Due Process Clause" (citing *Weinberger v. Wisenfeld*, 420 U.S. 636, 638 n.2 (1975)).  Accordingly, "[a]lthough the [F]ifth [A]mendment does not contain an express 'equal protection' clause, it is now settled that the concept of due process of law prohibits the federal government from discriminating

20

against any person on such irrelevant and invidious grounds as race, color, religion, or national origin." *Johnson v. Alexander*, 572 F.2d 1219, 1220 (8th Cir. 1978) (citing *Washington v. Davis*, 426 U.S. 229 (1976); *Bolling v. Sharpe*, 347 U.S. 497 (1954)).

Defendant identifies Kenya as his country of national origin. *See* Mot. for Reconsid. at 10 (describing himself as "a naturalized citizen who was born in Somalia in 1988, was brought to a Kenyan refugee camp in about 1990, and immigrated to Minnesota in 2005," where he has lived ever since), 12 (stating Defendant "is from Kenya"). Defendant was not, however, detained on the basis of his national origin. Defendant's detention was and is based on the preponderance of the evidence showing a substantial risk of flight and that there was and is no condition or combination of conditions that would reasonably assure his appearance at future court proceedings. That evidence included (1) Defendant's actions in allegedly obtaining a new passport under false pretenses after his was seized in connection with a massive fraud investigation of which Defendant knew he was a target; (2) the temporal proximity between that seizure and Defendant's alleged efforts to obtain a new passport; (3) Defendant booking a one-way flight to Kenya; (4) Defendant's significant financial resources, including a representation "to an associate claiming to have $6 million worth of investments in Kenya," Det. Order at 3; and (5) Defendant's personal ties to Kenya, where his father lives. As summarized by the district judge, "After the FBI searched his home and car and seized his passport and passport card, [Defendant] booked a flight to Kenya and applied for a new passport." Order Denying Mot. at 4. Most "[c]ompelling" to the district judge were "the fact of a much larger fraud investigation, the

FBI search, the nature of the underlying charge and its temporal proximity to that search, and the booked flight." Order Denying Mot. at 3-4.

The magistrate judge found that Defendant "has a motive to flee, a means to flee, and a place to flee, as demonstrated by his present and potential criminal exposure, his significant financial resources, and his personal and financial ties to Kenya." Det. Order at 3. The district judge likewise concluded that "[t]he evidence shows not just a risk of flight, but a demonstrated plan of flight and actions taken to carry out that plan." Order Denying Mot. at 4. The fact that some of the evidence giving rise to serious concerns about Defendant's risk of flight was connected to the location he identifies as his country of national origin does not perforce mean his detention was based on that national origin.

### 3. Right to a Speedy Trial Under the Sixth Amendment

Defendant also asserts his right to a speedy trial under the Sixth Amendment. According to Defendant, his continued detention will violate that right.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend VI. "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences, and no Sixth Amendment right to a speedy trial arises until charges are pending." *United States v. Perez-Perez*, 337 F.3d 990, 995 (8th Cir. 2003) (quotation omitted); *see also United States v. Johnson*, 990 F.3d 661, 670 (8th Cir. 2021). "A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring a speedy trial inquiry." *Perez-Perez*, 337 F.3d at 995; *accord United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003); *see also*

*Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.").

In *Barker v. Wingo*, "[t]he Supreme Court identified four factors to consider when applying a Sixth Amendment balancing test to a pretrial delay: the length of delay, the reason for delay, whether the defendant asserted the right to a speedy trial, and whether the defendant suffered any prejudice." *Perez-Perez*, 337 F.3d at 995 (citing 407 U.S. 514, 530 (1972)); *see also, e.g.*, *United States v. Ali*, 47 F.4th 691, 697-98 (8th Cir. 2022); *Johnson*, 990 F.3d at 670.

Significantly,

> to trigger a speedy trial analysis, an accused must allege that the interval between the accusation and trial *has crossed* the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy trial' if it has, in fact, prosecuted his case with customary promptness.

*Doggett*, 505 U.S. at 651-52 (emphasis added); *accord Ali*, 47 F.4th at 698; *United States v. Leveke*, 38 F.4th 662, 671 (8th Cir. 2022).  This is a "threshold showing" Defendant is required to make.  *Leveke*, 38 F.4th at 671; *see Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism."); *United States v. Summage*, 575 F.3d 864, 875 (8th Cir. 2009) ("Initially, we must determine whether the delay between indictment and Summage's motion to dismiss was presumptively prejudicial.").  "[C]onsideration of the length of the delay requires a double inquiry: (1) whether the length of delay was presumptively prejudicial such that it triggers the *Barker* analysis, and, if

23

triggered, (2) the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Johnson*, 990 F.3d at 670 (quotation omitted); *see also Doggett*, 505 U.S. at 652 (noting "double enquiry"). "Where no presumptively prejudicial delay existed, [courts] need not examine the remaining three factors under *Barker*." *Titlbach*, 339 F.3d at 699; *accord Ali*, 47 F.4th at 698; *see also Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

In his motion, Defendant asserts that "the delay in this case is very likely to be uncommonly long," Mot. for Reconsid. at 8, not that it has become so. To the extent Defendant asserts in his reply that "the delay [here] is already long and will get much longer," Def.'s Reply at 4, ECF No. 146, Defendant's argument glosses over the realities of what has occurred during the approximately five months that he has been detained. Defendant's case proceeded apace on the passport charge with pretrial motions and the criminal motions hearings generally occurring in the ordinary course. The Government requested and was granted a two-day extension to respond to Defendant's motion to suppress. The report and recommendation on Defendant's motion to suppress was issued on October 14, 2022, and rulings on Defendant's remaining pretrial motions were issued by separate order the same day. While those pretrial matters were under advisement, the Superseding Indictment was handed down, adding seven co-defendants and 42 new charges. As stated above, with respect to Defendant, the Superseding Indictment again charged him with one count of making a false statement in a passport application along with 23 new counts. The Court has directed the parties to meet and confer and submit a

proposed case management schedule for the completion of pretrial proceedings in light of the complexities of this and the related cases. *Cf. Barker*, 407 U.S. at 530-31 ("Nevertheless, because of the imprecision of the right to a speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (footnote omitted)); *Johnson*, 990 F.3d at 670 ("[T]he heavy discovery in this case mitigates the delay's length.").

Even assuming for sake of argument that the entirety of these five months should be considered as delay in this case, five months does not meet the threshold requirement for presumptively prejudicial delay. *See, e.g.*, *Leveke*, 38 F.4th at 671-72 (nine-month delay not presumptively prejudicial); *Titlbach*, 339 F.3d at 699 (eight-month delay not presumptively prejudicial). Accordingly, the Court need not consider the remaining *Barker* factors. *Doggett*, U.S. at 651-52; *Barker*, 407 U.S. at 530; *Leveke*, 38 F.4th at 672; *Titlbach*, 339 F.3d at 699.

[Continued on next page.]

## III. ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's "Motion for Reconsideration of Detention Pursuant to 18 U.S.C. 3142(f)(2)(B) and Demand for Speedy Trial," ECF No. 132, is **DENIED**.

Date: October  31  , 2022                              _s/ Tony N. Leung_
                                                       Tony N. Leung
                                                       United States Magistrate Judge
                                                       District of Minnesota

                                                       _United States v. Farah_
                                                       Case No. 22-cr-124(1) (NEB/TNL)