UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124 (NEB/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ABDIAZIZ SHAFII FARAH ET AL.,

        Defendants.

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Joseph H. Thompson, Matthew S. Ebert, Harry M. Jacobs, and Chelsea A. Walcker, Assistant United States Attorneys, respectfully submits its post-hearing memorandum in opposition to Defendant Mohamed Jama Ismail's motion to suppress his January 20, 2022 statements (Doc. No. 250) and Defendants Abdiaziz Shafii Farah, Mohamed Jama Ismail, Mahad Ibrahim, Said Shafii Farah, Abdiwahab Maalim Aftin, and Mukhtar Mohamed Shariff's motion for discovery relief (Doc. No. 241). The defendants' motions should be denied because Ismail's January 20, 2022 statements were non-custodial and voluntary, and the defendants are not entitled to additional, extraordinary discovery relief.

**RELEVANT FACTS**

**I.  The January 20, 2022 Interview of Ismail**

On January 20, 2022, at approximately 7:00 a.m., federal agents executed a federal search warrant at Ismail's residence in Savage, Minnesota. (8/21/23 Hr'g Tr.

("Tr.") at 99:9-10, 99:23; *see also* 22-mj-09 TNL.) Ismail was home when agents arrived to conduct the search. (Tr. at 100:2-3.) In order to safely execute the search warrant, agents briefly handcuffed Ismail and escorted him from the home, in accordance with standard procedure. (*Id.* at 99:16-19, 100:6-11, 101:23.) Because Ismail was wearing pajamas and the outside temperature was below zero at the time of the search, agents had Ismail sit in a heated unmarked law enforcement vehicle parked outside Ismail's residence while they searched the residence. (*Id.* at 102:18-19, 102:21-25, 103:13-21.) Once Ismail was safely inside the vehicle, agents immediately removed his handcuffs. (*Id.* at 104:17-21, 122:15-16.) Ismail sat in the backseat of the vehicle with the doors unlocked. (*Id.* at 104:13-14, 110:13.)

Ismail agreed to speak with United States Postal Inspection Service (USPIS) Inspector Peter Holt and Internal Revenue Service (IRS) Special Agent Alex Bjorvik inside the vehicle. (*Id.* at 104:5-6.) The approximate two-hour interview was recorded. (*Id.* at 105:4; *see generally* Gov't Ex. B.) Ismail was advised that he was not under arrest, that he did not have to speak with the agents, that he was free to stop speaking with them at any time, and that he was free to leave at any time. (Tr. at 105:23-106:1; Gov't Ex. B at 1:00-1:04.) Ismail was also advised that he was free to take one of his vehicles and that if he needed anything from his residence, agents could retrieve the items. (Tr. at 106:13-15.) Ismail never asked to leave or terminate the interview. (*See* Gov't Ex. B.) He never asked to speak with an attorney. (*See id.*; Tr. at 108:9-10.)

Only two agents were in the vehicle and neither drew a weapon at any time during the interview. (*See* Gov't Ex. B.) Ismail was not handcuffed during the

2

interview. (Tr. at 104:17-21, 122:15-16.) The tone of the interview was non-confrontational and conversational. (*See* Gov't Ex. B; Tr. at 111:2-3.) Ismail's demeanor was comfortable and relaxed, and he did not appear upset or angry. (*See* Gov't Ex. B; Tr. at 107:10-11, 107:17-18.) At no point during the interview were there any instances of violence, threats, ruses, or promises directed towards Ismail. (Tr. at 110:22-111:1; *see generally* Gov't Ex. B.)

Upon the conclusion of the interview, Ismail stated that he was comfortable where he was and that he would wait in the vehicle while agents completed the search of the residence. (Tr. at 108:24-109:2.) Ismail exited the vehicle and entered his residence approximately twenty minutes later when the search was complete. (*Id.* at 110:3-10.) Ismail was not arrested. (Tr. at 104:22-23.)

## II. The Government's Discovery Disclosures

On November 16, 2022, defense counsel requested that the Court appoint a Coordinating Discovery Attorney in light of the anticipated "large volume and technical nature of discovery." (Doc. No. 167 at 2.) On November 17, 2022, the Court granted the request and appointed a discovery coordinator to address the large volume of discovery in this case. (*See* Doc. No. 172.) The Court ordered the Coordinating Discovery Attorney to "oversee any discovery issues common to all defendants," including managing discovery produced by the government. (*Id.* at 1.)

On December 6, 2022, the government made its initial discovery production to each defendant. On April 28, 2023, the government made a second discovery production to all the defendants. Between these productions, the government

disclosed all materials relevant to Rule 16(a)(1) in its possession, custody, or control, in addition to materials that exceed the requirements of Rule 16, and has supplemented those disclosures with additional materials subsequently acquired. As a professional courtesy, the government also provided detailed discovery indices to defense counsel along with each of its productions. (Tr. at 24:22-25; *see, e.g.*, Gov't Ex. A.) As described at the motions hearing, the production indices were intended to provide defense counsel with a detailed roadmap, which categorize, for example, the type of evidence disclosed, the producing party, the particular subject, and the date range. (Tr. at 30:10-19, 31:18-19; *see also, e.g.*, Gov't Ex. A.) Throughout the pendency of this case, the government has remained willing, ready, and able to field any questions as they arise from defense counsel. (Tr. at 37:23-25.)

## ARGUMENT

**I.     Defendant Ismail's Motion to Suppress Statements Should Be Denied Because His January 20, 2022 Statements Were Non-Custodial and Voluntary**

### A.     Ismail's Statements Were Non-Custodial

In his post-hearing brief, Ismail argues that his January 20, 2022 statements to law enforcement should be suppressed because he was in custody and was not read his *Miranda* rights. (*See* Doc. No. 301 at 3-7.) Specifically, Ismail argues that he did not feel free to leave because he had nowhere else to go, he was dressed in his "skivvies" with no personal items, law enforcement initiated the contact, and he was in the back of a police vehicle. (*See id.* at 4-5.)

4

It is well-settled that *Miranda* does not apply when the defendant is not in custody when being questioned. *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation."); *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)) (explaining that the procedural safeguards prescribed by *Miranda* apply "only where there has been such a restriction on a person's freedom as to render him 'in custody'").

In this case, numerous factors about Ismail's conversation with Inspector Holt and Agent Bjorvik on January 20, 2022 show the conversation was non-custodial. The interviewing agents identified themselves and asked if Ismail would talk with them while he was inside the unmarked law enforcement vehicle. Ismail agreed. Immediately and before asking any questions, Inspector Holt advised Ismail that he did not have to speak with him, that was not under arrest, and that he was free to leave at any time. Ismail responded, "I don't mind, I have nothing to hide." (Gov't Ex. B at 1:17-1:20.) Ismail was not handcuffed. Only two agents were present during the conversation. Neither Inspector Holt or Agent Bjorvik raised their voice with Ismail or yelled at him; the demeanor of the agents was friendly and informal. They did not point a gun or any other weapon at him. After the interview was over, the agents thanked him for his time and reiterated that he was free to leave. Ismail decided to remain in the vehicle after the interview while agents finished searching his residence. Based on the totality of the circumstances, the interview of Ismail was clearly non-custodial and therefore, did not require *Miranda* warnings. *See*

*United States v. Galceran*, 301 F.3d 927, 929-30 (8th Cir. 2002) (discussing factors to determine whether conversation was custodial); *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (same). On this ground, Ismail's motion should be denied.

### B.   Ismail's Statements Were Voluntary

In his post-hearing brief, Ismail argues that his January 20, 2022 statements to law enforcement should be suppressed because they were involuntary. (*See* Doc. No. 301 at 7-8.) Specifically, Ismail challenges whether his statements were compelled by "physical and psychological pressures." (*Id.* at 8.)

A statement that is the product of a non-custodial interrogation should be suppressed only if the statement was not made voluntarily. *See United States v. Clark*, No. 15-cr-154 DWF/LIB, 2015 WL 4964665, at *3 (D. Minn. Aug. 19, 2015). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001). In making this determination, courts will inquire into the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure. *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990).

Under the totality of the circumstances, the record demonstrates that Ismail's statement was entirely voluntary. No coercive tactics were used. No threats were made. He was not shouted at or physically threatened. He was told he could end the interview and leave at any time. The tone of the interview was cordial throughout. The agents were consistently forthright, explaining why they wanted to speak with

6

him, never lied to him, and did not make any promises. Ismail clearly understood the agents' questions and responded appropriately. The totality of the circumstances shows that Ismail's will was not overborne and that he had the requisite level of comprehension to provide a voluntary statement to law enforcement.

For all the foregoing reasons, Ismail's motion to suppress his statements during his January 20, 2022 interview should be denied.

## II. Defendants' Motion for "Discovery Relief" Should Be Denied

In their post-hearing brief, defendants Abdiaziz Shafii Farah, Mohamed Jama Ismail, Mahad Ibrahim, Said Shafii Farah, Abdiwahab Maalim Aftin, and Mukhtar Mohamed Shariff argue that the quantity of discovery the government provided to defendants "precluded a real review of that information" and that they are entitled to multiple bases for relief, including an order requiring the government to provide "hot documents," documents "specifically linked to each count," and "early exhibit and witness lists." (Doc. No. 302 at 2.)

The government opposes this motion in its entirety. The government's discovery productions in this case fully comports with the Federal Rules of Criminal Procedure and the Constitution. The defendants concede that the government has more than complied with its Rule 16 discovery obligations. (*See* Doc. No. 241 at 2 (noting that defendants "applaud the government for making fulsome disclosure").) Indeed, the discovery provided by the government in this case has been broad and timely and far exceeds what is required by Rule 16.

Defendants' claim that they do not have the ability to meaningfully review the discovery or that the government has shrugged off its constitutional responsibilities simply by producing a large volume of documents is unfounded. While the discovery is extensive,[1] it is also accessible and manageable. The vast majority of the discovery produced is in electronic form, which enables the defendants to conduct narrowly tailored searches to quickly locate documents. For example, documents connected to a defendant or a witness can be located by name or email address.  Indeed, defendants acknowledge that evidence review technology aids their ability to review discovery in this case. (*See* Tr. at 23:12-13.)

Additionally, while not required, the government produced a detailed discovery index accompanying these productions to aid the defendants in reviewing the discovery. The government also Bates stamped the documents with prefixes to indicate the source of the discovery materials. Within the grand jury-related discovery, the government provided the defendants with a detailed roadmap of the evidence through specific exhibits pertaining to each of the charged counts. Moreover, the government has been responsive to any questions raised by defense counsel, such as ability to access documents.

In addition, defense counsel has had other special accommodations with respect to the discovery in this case. The voluminous discovery produced by the

---

[1] Notably, the bulk of the discovery produced by the government consists of bank records from the companies the defendants used to carry out their scheme, which are typically reviewed by outside financial experts and summarized for the defendants.

government was expected by the defendants; the anticipated large volume of discovery materials served as the basis for their early request for discovery relief in the form of a coordinating discovery attorney. (*See* Doc. No. 167.) As a result, the defendants have had specialized access to a coordinating discovery coordinator in this case, which the Court appointed at defense counsel's request. (*See* Doc. No. 172.) As the government noted at the motions hearing:

> [T]hat coordinator is charged with assessing the needs of court-appointed defense counsel and further identifying any additional vendor support that may be appropriate. This includes imaging, data processing, hosting, trial presentation, copying, in addition to identifying any additional human resources that may be needed for court-appointed defense counsel for organization and substantive review of information, as well as providing training services to court-appointed defense counsel as a group and individually. So again, these important functions enable many attorneys in this case, whether they're CJA or [not] to avail themselves of th[ose] services. And all of that helps them to look at the discovery.

(Tr. at 33:1-14.) Defendants' claims about discovery are misplaced in light of the broad array of substantial services available to them review the evidence in this case.

Finally, the volume of discovery and the manner in which the government produced the materials is similar to that in other large cases in this District. *See, e.g.*, *United States v. Rahm*, Criminal No. 20-232 (JRT/BRT); *United States v. Morris*, Criminal No. 17-107 (DWF/TNL); *United States v. Gilbertson*, Criminal No. 17-66 (PJS/HB). None of the out-of-District cases cited by the defendants require a different result here. (*See* Doc. No. 241 at 4-5.) Courts in this District and others have repeatedly denied requests by defendants facing voluminous discovery to impose obligations on the government to provide relief similar to that sought by the

9

defendants here. *See, e.g.*, *United States v. Cole*, No. 09-193 (MJD/AJB), Doc. No. 107, at 2 (Nov. 30, 2009) (citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 568-70 (S.D.N.Y. 2000)) (holding that "Rule 16 establishes the government's obligation to produce, but does not impose a duty to identify those documents to be used at trial"); *see also, e.g.*, *United States v. Reddy*, 190 F. Supp. 2d 558, 571 (S.D.N.Y. 2002) (noting that Rule 16 contains no requirement of government identification and concluding that "[w]hether or not the Court has the authority to order . . . the Court finds no basis for doing so" despite the document-intensive nature of the case). Defendants point to no legal authority from this District or the Eighth Circuit to support their unusual—and amorphous—requested relief.

Accordingly, because the government's discovery productions fully comport with the Federal Rules of Criminal Procedure and the Constitution, and the defendants have not demonstrated any authority in Rule 16 or persuasive precedent to warrant such extraordinarily relief, the defendants' motion should be denied.

Dated: November 17, 2023                    Respectfully Submitted,

                                              ANDREW M. LUGER
                                              United States Attorney

                                              */s/ Chelsea Walcker*
                                              BY:   CHELSEA A. WALCKER
                                              (Attorney ID No. 0396792)
                                              JOSEPH H. THOMPSON
                                              (Attorney ID No. 0343031)
                                              MATTHEW S. EBERT
                                              (Attorney ID No. 0386655)
                                              HARRY M. JACOBS
                                              (Attorney ID No. NY5239314)
                                              Assistant United States Attorneys